**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN DIVISION**

| | |
|---|---|
| DARIUS SMITH, Individually and for Others Similarly Situated, | Case No. _____ |
| Plaintiff, | Jury Trial Demanded |
| v. | FLSA Collective Action and Rule 23 Class Action |
| COMMUNITY HEALTH CARE, INC. d/b/a COMPLETECARE HEALTH NETWORK, | |
| Defendant. | |

**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.      Darius Smith ("Smith") brings this class and collective action to recover unpaid wages and other damages from Community Health Care, Inc. d/b/a CompleteCare Health Network ("CompleteCare").

2.      Smith worked for CompleteCare as a Registered Nurse ("RN") in Cumberland County, New Jersey.

3.      Like the Putative Class Members (as defined below), Smith regularly worked more than 40 hours in a week.

4.      But CompleteCare did not pay them for all the hours they worked.

5. Instead, CompleteCare automatically deducted 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

6. Smith and the Putative Class Members were thus not paid for that time.

7. But Smith and the Putative Class Members did not actually receive *bona fide* meal breaks.

8. Instead, CompleteCare required Smith and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and CompleteCare continuously subjected them to work interruptions during their unpaid "meal breaks."

9. CompleteCare's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law, as amended by the New Jersey Wage Theft Act ("NJWHL") by depriving Smith and the Putative Class Members of overtime wages for all overtime hours worked.

10. Likewise, CompleteCare's auto-deduction policy violates the and the New Jersey Wage Payment Law, as amended by the New Jersey Wage Theft Act ("NJWPL") by depriving Smith and the Putative Class Members of earned wages (at their agreed hourly rates) for all hours worked.

11. In addition to excluding time Smith and the Putative Class Members worked during their unpaid "meal breaks," CompleteCare also only paid Smith and the Putative Class Members for overtime hours that CompleteCare pre-approved.

12.    If CompleteCare did not pre-approve the overtime hours Smith and the Putative Class Members worked, CompleteCare did not pay them for these "unapproved" overtime hours worked.

13.    Instead, Smith and the Putative Class Members were forced to work their "unapproved" overtime hours "off the clock" (without pay) to complete their patient care responsibilities.

14.    CompleteCare's overtime approval policy violates the FLSA and NJWHL by depriving Smith and the Putative Class Members of overtime wages for all overtime hours worked.

15.    Likewise, CompleteCare's overtime approval policy violates the NJWPL by depriving Smith and the Putative Class Members of earned wages (at their agreed hourly rates) for all hours worked.

### JURISDICTION & VENUE

16.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

17.    This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. *See* 28 U.S.C. § 1367.

18.    This Court has general personal jurisdiction over CompleteCare because CompleteCare is a domestic corporation.

19.    Venue is proper because CompleteCare is headquartered in Bridgeton, New Jersey, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

**PARTIES**

20.    Smith worked for CompleteCare as an RN in Cumberland County, New Jersey from approximately September 2020 until November 2022.

21.    Throughout his employment, CompleteCare classified Smith as non-exempt and paid him on an hourly basis.

22.    Throughout his employment, CompleteCare subjected Smith to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

23.    But throughout his employment, Smith did not actually receive *bona fide* meal breaks.

24.    Further, throughout his employment, CompleteCare subjected Smith to its uniform overtime approval policy.

25.    Smith brings this action on behalf of himself and other similarly situated hourly, non-exempt patient care employees who worked for CompleteCare who were subject to CompleteCare's (1) automatic meal break deduction policy and/or (2) overtime approval policy.

26.    CompleteCare automatically deducts 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

27.    And CompleteCare only pays these employees for the overtime hours they work that CompleteCare pre-approved.

28.    Thus, CompleteCare uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA and/or NJWHL.

29.    Likewise, CompleteCare uniformly deprives these employees of earned wages (at their agreed hourly rates) for all hours worked in violation of the NJWPL.

30.    The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt CompleteCare employees who (1) received a meal period deduction and/or (2) were subject to CompleteCare's overtime approval policy at any time during the past 3 years ("FLSA Collective Members").**

31.    Smith also seeks to represent such a class under the NJWHL and NJWPL pursuant to FED. R. CIV. P. 23.

32.    The New Jersey Class of similarly situated employees is defined as:

> **All hourly, non-exempt CompleteCare employees in New Jersey who (1) received a meal period deduction and/or (2) were subject to CompleteCare's overtime approval policy at any time during the past 6 years ("New Jersey Class Members").**

33.    The FLSA Collective Members and the New Jersey Class Members are collectively referred to as the "Putative Class Members."

34.    CompleteCare is a New Jersey non-profit corporation that maintains its headquarters in Bridgeton, New Jersey.

35.    CompleteCare may be served with process by serving its officers, directors, managing agents, or general agents at its registered office: **52 South Laurel Street, Bridgeton, New Jersey 08302**.

### COVERAGE UNDER THE FLSA

36.    At all relevant times, CompleteCare was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

37.    At all relevant times, CompleteCare, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

38.    At all relevant times, CompleteCare was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because CompleteCare, as a hospital network, is engaged in the operation of a hospital and is an institution primarily engaged in providing healthcare services.

39.    At all relevant times, CompleteCare was also an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of

Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as computers, cellphones, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

40.     At all relevant times, CompleteCare has had an annual gross volume of sales made or business done of not less than $500,000 each year.

41.     At all relevant times, Smith and the Putative Class Members were CompleteCare's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

42.     At all relevant times, Smith and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

43.     CompleteCare uniformly deducted 30 minutes a day from Smith's and the Putative Class Members' recorded work time for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

44.     As a result, CompleteCare failed to pay Smith and the Putative Class Members wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

45.     Further, CompleteCare uniformly subjected Smith and the Putative Class Members to its overtime approval policy, refusing to pay these employees overtime wages for any "unapproved" overtime hours worked.

46.     As a result, CompleteCare failed to pay Smith and the Putative Class Members overtime wages for the "unapproved" overtime hours these employees were forced to work "off the clock" before and/or after their scheduled shifts.

47.     CompleteCare's meal break deduction and overtime approval policies, therefore, violate the FLSA by depriving Smith and the Putative Class Members of overtime wages for all overtime hours worked. 29 U.S.C. § 207(a) & (e).

## FACTS

48.     CompleteCare "is a system of health centers in southern New Jersey."[1]

49.     Specifically, "CompleteCare operates 19 locations throughout Gloucester, Cumberland, and Cape May Counties[.]"[2]

50.     To meet its business objectives, CompleteCare hires patient care workers, including Smith and the Putative Class Members, to work in its various healthcare facilities.

---

[1] https://www.completecarenj.org/# (last visited Aug. 22, 2023).

[2] https://www.completecarenj.org/about-completecare/ (last visited Aug. 22, 2023); *see also* https://www.completecarenj.org/locations/ (identifying all CompleteCare locations) (last visited Aug. 22, 2023).

51.    CompleteCare uniformly classifies these patient care employees (including Smith and the Putative Class Members) as non-exempt and pays them on an hourly basis.

52.    While exact job titles and precise job duties may differ, these patient care employees are subjected to the same or similar illegal pay practices for similar work.

53.    For example, Smith worked for CompleteCare as an RN in Millville, Cumberland County, New Jersey from approximately September 2020 until November 2022.

54.    As an RN, Smith's primary responsibilities included providing direct patient care, such as monitoring patients, checking vitals, administering medications, performing preliminary diagnostics, charting all treatments, responding to emergencies, and generally assisting doctors and other nursing staff.

55.    Throughout his employment, CompleteCare classified Smith as non-exempt and paid him on an hourly basis.

56.    Throughout his employment, CompleteCare subjected Smith to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

57.    But throughout his employment, Smith did not actually receive *bona fide* meal breaks.

58.     Further, throughout his employment, CompleteCare subjected Smith to its uniform overtime approval policy, only paying him for the overtime hours he worked that CompleteCare had pre-approved.

59.     But throughout his employment, Smith was forced to work "unapproved" overtime hours "off the clock" to complete his patient care responsibilities.

60.     Smith and the Putative Class Members perform their jobs under CompleteCare's supervision and use materials, equipment, and technology CompleteCare approves and supplies.

61.     CompleteCare requires Smith and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

62.     At the end of each pay period, Smith and the Putative Class Members receive wages from CompleteCare that are determined by common systems and methods that CompleteCare selects and controls.

63.     CompleteCare requires Smith and the Putative Class Members to record their hours worked using CompleteCare's timeclock system.

64.     Further, CompleteCare subjects Smith and the Putative Class Members to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

65.     Specifically, CompleteCare automatically deducts 30 minutes a day from Smith's and the Putative Class Members' recorded work time and wages for so-called "meal breaks."

66.     CompleteCare automatically deducts this time regardless of whether Smith and the Putative Class Members actually receive full, uninterrupted, 30-minute meal breaks.

67.     CompleteCare simply assumes Smith and the Putative Class Members receive *bona fide* meal breaks each shift they work.

68.     But Smith and the Putative Class Members do not actually receive *bona fide* meal breaks.

69.     Instead, CompleteCare requires Smith and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

70.     And CompleteCare continuously subjects Smith and the Putative Class Members to work interruptions during their unpaid meal periods.

71.     Because of these constant work interruptions, Smith and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

72.     Rather, during their unpaid "meal breaks," Smith and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

73.     Thus, Smith and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for CompleteCare's—not these employees'—predominant benefit.

74.     This unpaid time is compensable under the FLSA and NJWHL because CompleteCare knew, or should have known, that (1) Smith and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on CompleteCare's premises or under CompleteCare's supervision, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for CompleteCare's predominant benefit.

75.     The unpaid time is also compensable under the NJWPL because CompleteCare agreed to pay Smith and the Putative Class Members set hourly rates of pay for all the time they worked, and CompleteCare failed to pay these employees their earned wages for these on-duty "meal breaks."

76.     CompleteCare fails to exercise its duty as Smith's and the Putative Class Members' employers to ensure these employees are not performing work that CompleteCare does not want performed during their unpaid "meal breaks."

77.     And CompleteCare knows Smith and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because CompleteCare expects and requires these employees to do so.

78.     In fact, Smith and the Putative Class Members repeatedly complained to CompleteCare's management and their supervisors about being forced to work during their unpaid "meal breaks."

79.     Despite accepting the benefits, CompleteCare does not pay Smith and the Putative Class Members for the compensable work they perform during their "meal breaks."

80.     Thus, under CompleteCare's uniform automatic meal break deduction policy, Smith and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA and/or NJWHL.

81.     Likewise, under CompleteCare's uniform automatic meal break deduction policy, Smith and the Putative Class Members are denied earned wages at their agreed rates of pay for those on-duty "meal breaks" in violation of the NJWPL.

82.    In addition to excluding time from these employees' wages for "meal breaks," CompleteCare also uniformly subjects Smith and the Putative Class Members to its overtime approval policy.

83.    Specifically, CompleteCare requires Smith and the Putative Class Members to obtain pre-approval from CompleteCare to work beyond their scheduled shifts and/or more than 40 hours in a week.

84.    And CompleteCare does not pay Smith and the Putative Class Members for any "unapproved" overtime hours worked.

85.    Indeed, if Smith and the Putative Class Members work "unapproved" overtime "**on** the clock," CompleteCare deducts such "unapproved" overtime hours from their recorded work time (and wages).

86.    But Smith and the Putative Class Members are routinely forced to work "unapproved" overtime to complete their patient care job duties (e.g., to complete their mandatory charting, respond to unexpected emergencies, and not abandon the patients under their care in dereliction of their legal and ethical obligations as healthcare workers) for CompleteCare's—not these employees'—predominant benefit.

87.    Thus, Smith and the Putative Class Members are routinely forced to work "unapproved" overtime "off the clock" before and/or after their shifts (without pay).

88.    This unpaid time is compensable under the FLSA and NJWHL because CompleteCare knew, or should have known, that (1) Smith and the Putative Class Members were performing unpaid work before and/or after their shifts, (2) they were not free to engage in personal activities during their pre- and/or post-shift "off the clock" work, (3) they remained on CompleteCare's premises and under CompleteCare supervision, and/or (4) they were substantially performing their regular patient care duties for CompleteCare's predominant benefit.

89.    The unpaid time is also compensable under the NJWPL because CompleteCare agreed to pay Smith and the Putative Class Members set hourly rates of pay for all the time they worked, and CompleteCare failed to pay these employees their earned wages for their pre- and/or post-shift "off the clock" work.

90.    CompleteCare fails to exercise its duty as Smith's and the Putative Class Members' employers to ensure these employees are not performing work that CompleteCare does not want performed "off the clock" before and/or after their scheduled shifts.

91.    And CompleteCare knows Smith and the Putative Class Members routinely perform work "off the clock" before and/or after their scheduled shifts because CompleteCare expects and requires these employees to do so.

92.    In fact, Smith and the Putative Class Members repeatedly complained to CompleteCare's management and their supervisors about being forced to work

15

"unapproved" overtime "off the clock" (and without pay) to complete their patient care responsibilities.

93.     Despite accepting the benefits, CompleteCare does not pay Smith and the Putative Class Members for the compensable work they perform before and/or after their scheduled shifts.

94.     Thus, under CompleteCare's uniform overtime approval policy, Smith and the Putative Class Members are denied overtime pay for the "unapproved" overtime hours they work "off the clock" during workweeks in which they work more than 40 hours in violation of the FLSA and/or NJWHL.

95.     Likewise, under CompleteCare's uniform overtime approval policy, Smith and the Putative Class Members are denied earned wages at their agreed hourly rates of pay for the "unapproved" overtime hours they work "off the clock" in violation of the NJWPL.

96.     Smith worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

97.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

98.     Indeed, throughout the relevant period, Smith and the Putative Class Members typically worked 7 to 10 hours a day for at least 5 days a week.

99.     And Smith and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks and/or before and/or after their shifts to complete their patient care job duties and responsibilities for CompleteCare's predominate benefit.

100.    As a result, Smith and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

101.    When Smith and the Putative Class Members work more than 40 hours in a workweek, CompleteCare does not pay them overtime wages for all overtime hours worked because CompleteCare fails to include (1) time these employees worked "off the clock" during their unpaid meal breaks and/or (2) "unapproved" overtime hours these employees worked "off the clock" in their total number of hours worked in a given workweek in violation of the FLSA and/or NJWHL.

102.    Likewise, CompleteCare does not pay Smith and the Putative Class Members all their earned wages at their agreed hourly rates of pay for all hours worked because CompleteCare fails to include (1) time these employees worked "off the clock" during their unpaid meal breaks and/or (2) "unapproved" overtime hours these employees worked "off the clock" in their total number of hours worked in a given workweek in violation of the NJWPL.

**CLASS & COLLECTIVE ACTION ALLEGATIONS**

103.    Smith incorporates all other paragraphs by reference.

104.    Smith brings his claims as a class and collective action on behalf of himself and the Putative Class Members.

105.    The Putative Class Members were victimized by CompleteCare's automatic meal break deduction and/or overtime approval policies, which are in willful violation of the FLSA and/or New Jersey wage laws.

106.    Other Putative Class Members worked with Smith and indicated they were paid in the same manner, performed similar work, and were subject to CompleteCare's same automatic meal break deduction and/or overtime approval policies.

107.    Based on his experience with CompleteCare, Smith is aware CompleteCare's illegal practices were imposed on the Putative Class Members.

108.    The Putative Class Members are similarly situated in all relevant respects.

109.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

110.    Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

111.    Rather, the Putative Classes are held together by CompleteCare's uniform automatic meal break deduction and/or overtime approval policies, both of

which systematically deprived Smith and the Putative Class Members of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek.

112.  CompleteCare's failure to pay wages and overtime wages as required by the FLSA and/or New Jersey wage laws results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

113.  CompleteCare's records reflect the number of hours the Putative Class Members recorded they worked each week.

114.  CompleteCare's records also show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

115.  Likewise, CompleteCare's records show that it deducted any "unapproved" overtime hours from the Putative Class Members' recorded work time.

116.  The back wages owed to Smith and the Putative Class Members can be calculated using the same formula applied to the same records.

117.  Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to CompleteCare's records, and there is no detraction from the common nucleus of liability facts.

118.   Therefore, the issue of damages does not preclude class or collective treatment.

119.   Smith's experiences are therefore typical of the experiences of the Putative Class Members.

120.   Smith has no interest contrary to, or in conflict with, the Putative Class Members.

121.   Like each Putative Class Member, Smith has an interest in obtaining the unpaid wages owed to them under state and/or federal law.

122.   A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

123.   Absent this class and collective action, many Putative Class Members likely will not obtain redress for their injuries, and CompleteCare will reap the unjust benefits of violating the FLSA and New Jersey wage laws.

124.   Further, even if some of the Putative Class Members could afford individual litigation against CompleteCare, it would be unduly burdensome to the judicial system.

125.   Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

126.   The questions of law and fact that are common to each member of the Putative Class predominate over any questions affecting solely the individual members.

127.   Among the common questions of law and fact are:

a.   Whether CompleteCare engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and/or New Jersey wage laws;

b.   Whether CompleteCare's automatic meal break deduction policy deprived Smith and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and/or New Jersey wage laws;

c.   Whether CompleteCare engaged in a policy and practice of refusing to pay Smith and the Putative Class Members for any overtime hours that CompleteCare had not pre-approved in violation of the FLSA and/or New Jersey wage laws;

d.   Whether CompleteCare's overtime approval policy deprived Smith and the Putative Class Members of pay for time worked "off the clock" before and/or after their shifts in violation of the FLSA and/or New Jersey wage laws;

e.   Whether CompleteCare knew, or had reason to know, Smith and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid meal breaks and/or before and/or after their shifts in violation of the FLSA and/or New Jersey wage laws;

f.   Whether CompleteCare failed to pay Smith and the Putative Class Members earned wages (at their agreed hourly rates of pay) for all hours worked, including hours worked "off the clock" during their unpaid meal breaks and/or before and/or after their shifts in violation of the NJWPL;

g. Whether CompleteCare failed to pay Smith and the Putative Class Members overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks and/or before and/or after their shifts in violation of the FLSA and/or NJWHL;

h. Whether CompleteCare's violations of the FLSA and/or New Jersey wage laws resulted from a continuing course of conduct;

i. Whether CompleteCare's decision to not pay Smith's and the Putative Class Members' all their earned wages (at their agreed rates of pay) for all hours worked was made in good faith;

j. Whether CompleteCare's decision not to pay Smith and the Putative Class Members overtime wages for all overtime hours worked as made in good faith; and

k. Whether CompleteCare's violations of the FLSA and/or New Jersey wage laws were willful.

128. Smith knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

129. As part of its regular business practices, CompleteCare intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and New Jersey wage laws with respect to Smith and the Putative Class Members.

130. CompleteCare's illegal meal break deduction policy deprived Smith and the Putative Class Members of earned wages for all hours worked and overtime wages for those hours worked after 40 in a workweek, which they are owed under federal and/or state law.

131.   CompleteCare's illegal overtime approval policy deprived Smith and the Putative Class Members of earned wages for all hours worked and overtime wages for those hours worked after 40 in a workweek, which they are owed under federal and/or state law.

132.   There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

133.   This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

134.   Those similarly situated employees are known to CompleteCare, are readily identifiable, and can be located through CompleteCare's business and personnel records.

### COMPLETECARE'S WAGE VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA AND/OR NEW JERSEY WAGE LAWS

135.   Smith incorporates all other paragraphs by reference.

136.   CompleteCare knew it was subject to the FLSA's and NJWHL's respective overtime provisions.

137.   CompleteCare knew the FLSA and NJWHL required it to pay employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

138.   CompleteCare also knew it was subject to the NJWPL.

139.   CompleteCare knew the NJWPL required it to pay employees, including the Putative Class Members, all earned wages for all hours worked at the rates CompleteCare agreed to pay them.

140.   CompleteCare knew the Putative Class Members were non-exempt employees entitled to overtime pay.

141.   CompleteCare knew the Putative Class Members were paid on an hourly basis.

142.   CompleteCare knew each Putative Class Members worked over 40 hours in at least one workweek during the three years before this Complaint was filed because CompleteCare required these employees to record their hours worked using its timeclock system.

143.   CompleteCare knew the FLSA, NJWHL, and NJWPL required it to pay employees, including the Putative Class Members, for all hours these employees performed compensable work.

144.   CompleteCare knew that, as the Putative Class Members' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that CompleteCare did not want performed.

145.   CompleteCare knew it failed to provide the Putative Class Members with *bona fide*, uninterrupted meal breaks.

24

146.   CompleteCare knew the Putative Class Members did not actually receive *bona fide*, uninterrupted meal breaks.

147.   CompleteCare knew the Putative Class Members regularly worked during their unpaid meal breaks.

148.   CompleteCare knew the Puative Class Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for CompleteCare's predominant benefit.

149.   Indeed, Putative Class Members complained to CompleteCare's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

150.   Thus, CompleteCare knew, should have known, or recklessly disregarded the fact that the Putative Class Members performed compensable work during their unpaid meal breaks.

151.   Nonetheless, CompleteCare automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

152.   CompleteCare decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks was neither reasonable, nor was the decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks made in good faith.

153.   CompleteCare knew the Putative Class Members worked before and/or after their scheduled shifts "off the clock."

154.   CompleteCare knew the Putative Class Members worked "unapproved" overtime before and/or after their scheduled shifts "off the clock."

155.   CompleteCare knew the Putative Class Members were substantially performing their regular patient care job duties for CompleteCare's predominant benefit during these "unapproved" overtime hours worked "off the clock."

156.   Indeed, Putative Class Members complained to CompleteCare's management, HR, and/or their supervisors about being forced to work "unapproved" overtime "off the clock."

157.   Thus, CompleteCare knew, should have known, or recklessly disregarded the fact that the Putative Class Members performed compensable work "off the clock" before and/or after their shifts.

158.   Nonetheless, CompleteCare only paid the Putative Class Members for the overtime hours they worked that CompleteCare had pre-approved.

159.   CompleteCare decision not to pay the Putative Class Members for "unapproved" overtime hours worked was neither reasonable, nor was the decision not to pay the Putative Class Members for "unapproved" overtime hours worked made in good faith.

160.   In sum, CompleteCare knew, should have known, or recklessly disregarded the fact that it did not pay the Putative Class Members for all the hours these employees performed compensable work.

161.   Nonetheless, CompleteCare did not pay the Putative Class Members for all hours these employees performed compensable work, including work performed during their unpaid meal breaks and/or they "unapproved" overtime hours they worked "off the clock" in violation of the FLSA and/or New Jersey wage laws.

162.   CompleteCare's failure to pay the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

163.   Likewise, CompleteCare's failure to pay the Putative Class Members all their earned wages (at their agreed hourly rates of pay) for all hours worked was neither reasonable, nor was CompleteCare's decision to not pay these employees all their earned wages (at their agreed hourly rates of pay) for all hours worked made in good faith.

164.   CompleteCare knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Smith and the Putative Class Members of earned wages for all hours worked and overtime wages for those hours worked after 40 in a workweek, in violation of the FLSA, NJWHL, and/or NJWPL.

165.    CompleteCare knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA and/or New Jersey wage laws.

### COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

166.    Smith incorporates all other paragraphs by reference.

167.    Smith brings his FLSA claim on behalf of himself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

168.    CompleteCare violated, and is violating, the FLSA by employing non-exempt employees (Smith and the FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks and/or any "unapproved" overtime hours worked "off the clock" before and/or after their shifts.

169.    CompleteCare's unlawful conduct harmed Smith and the FLSA Collective Members by depriving them of the overtime wages they are owed.

170.    Accordingly, Smith and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times

their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NJWHL
### (NEW JERSEY CLASS)

171.   Smith incorporates all other paragraphs by reference.

172.   Smith brings his NJWHL claim on behalf of himself and the New Jersey Class Members pursuant to FED. R. CIV. P. 23

173.   The conduct alleged violates the NJWHL (N.J.S.A. 34:11-56a, *et seq*.).

174.   At all relevant times, CompleteCare was an "employer" within the meaning, and subject to the requirements, of the NJWHL. *See* N.J.S.A. 34:11-56a1(g).

175.   At all relevant times, CompleteCare employed Smith and the New Jersey Class Members as covered "employees" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-56a1(f) and (h).

176.   The NJWHL requires employers, like CompleteCare, to pay employees, including Smith and the New Jersey Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked after 40 in a workweek. *See* N.J.S.A. 34:11-56a4(b).

177.   CompleteCare violated, and is violating, the NJWHL by employing non-exempt employees (Smith and the New Jersey Class Members) for workweeks

longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks and/or any "unapproved" overtime hours worked "off the clock" before and/or after their shifts. *See* N.J.S.A. 34:11-56a4(b).

178.   CompleteCare's unlawful conduct harmed Smith and the New Jersey Class Members by depriving them of the overtime wages they are owed.

179.   Accordingly, Smith and the New Jersey Class Members are entitled to recover their unpaid overtime wages under the NJWHL in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages in an amount equal to 200% of their unpaid wages, as well as attorney's fees and costs. *See* N.J.S.A. 34:11-56a25.

### COUNT III
#### FAILURE TO PAY ALL WAGES UNDER THE NJWPL
#### (NEW JERSEY CLASS)

180.   Smith incorporates all other paragraphs by reference.

181.   Smith brings his NJWPL claim on behalf of himself and the New Jersey Class Members pursuant to FED. R. CIV. P. 23

182.   The conduct alleged violates the NJWPL (N.J.S.A. 34:11-4.1, *et seq.*).

183.   At all relevant times, CompleteCare was an "employer" within the meaning, and subject to the requirements, of the NJWPL. *See* N.J.S.A. 34:11-4.1(a).

184.   At all relevant times, CompleteCare employed Smith and the New Jersey Class Members as covered "employees" within the meaning of the NJWPL. *See* N.J.S.A. 34:11-4.1(b).

185.   During the course of their employment, CompleteCare agreed to pay Smith and each New Jersey Class Member an hourly rates of pay.

186.   Smith and each NJWPL Class Member accepted CompleteCare's offer.

187.   Smith's and the Putative Class Members' agreed hourly pay rates are therefore "wages" within the meaning of the NJWPL. *See* N.J.S.A. 34:11-4.1(c).

188.   The NJWPL requires employers, like CompleteCare, to pay employees, including Smith and the New Jersey Class Members, "the full amount of wages due" to these employees for all the time they work at the rate agreed to by the parties on their established and regular paydays. *See* N.J.S.A. 34:11-4.2.

189.   CompleteCare violated, and is violating, the NJWPL by knowingly failing to pay Smith and the New Jersey Class Members the full amount of wages these employees earned (at their agreed hourly rates) for all the hours of work they performed, including those worked during their unpaid meal breaks and/or any "unapproved" overtime hours worked "off the clock" before and/or after their shifts. *See* N.J.S.A. 34:11-4.2.

190.  Smith and the New Jersey Class Members did not authorize CompleteCare to withhold these unpaid earned wages.

191.   Smith and the New Jersey Class Members' earned wages have remained unpaid for more than thirty days.

192.   CompleteCare's unlawful conduct harmed Smith and the New Jersey Class Members by depriving them of the earned wages they are owed.

193.   Accordingly, Smith and the New Jersey Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), plus liquidated damages in an amount equal to 200% of their unpaid wages, as well as attorney's fees and costs. *See* N.J.S.A. 34:11-4.10(c).

**JURY DEMAND**

Smith demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Smith, individually and on behalf of the Putative Class Members, seeks the following relief:

a.   An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.   An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.   An Order appointing Smith and his counsel to represent the interests of the FLSA Collective and New Jersey Class;

d.   An Order pursuant to Section 16(b) of the FLSA finding CompleteCare liable for unpaid overtime wages due to Smith

and the FLSA Collective Members, plus liquidated damages in amount equal to their unpaid overtime wages;

e.  An Order finding CompleteCare liable to Smith and the New Jersey Class Members for unpaid overtime wages owed under the NJWHL, plus liquidated damages in an amount equal to 200% of their unpaid overtime wages;

f.  An Order finding CompleteCare liable to Smith and the New Jersey Class Members for unpaid earned wages owed under the NJWPL, plus liquidated damages in an amount equal to 200% of their unpaid wages;

g.  Judgment awarding Smith and the Putative Class Members all unpaid wages, liquidated damages, treble damages, and any other penalties available under the FLSA, NJWHL, and NJWPL;

h.  An Order awarding attorney's fees, costs, and expenses;

i.  Pre- and post-judgment interest at the highest applicable rates; and

j.  Such other and further relief as may be necessary and appropriate.

Dated: August 25, 2023.                     Respectfully submitted,

**BERGER MONTAGUE PC**

*/s/ Camille Fundora Rodriguez*
Camille Fundora Rodriguez
    NJ No. 017642011
1818 Market Street, Suite 3600
Philadelphia, PA 19103
215-875-4635 – Telephone
215-875-4604 – Facsimile
crodriguez@bm.net

*Local Counsel for Plaintiff*

33

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS IN CHARGE FOR SMITH
AND THE PUTATIVE CLASS MEMBERS**